IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-03223-SBP

DARLETTE "DEE" STATON,

      Plaintiff,

v.

LOUIS DEJOY, Postmaster General, United States Postal Service,

      Defendant.

---

## ORDER ON DEFENDANT'S PARTIAL MOTION TO DISMISS

---

**Susan Prose, United States Magistrate Judge**

      This civil action comes before the court on the Partial Motion to Dismiss filed by Louis DeJoy, the Postmaster General of the United States ("Defendant" or "USPS"). ECF No. 9 ("Motion to Dismiss" or "Motion"). Plaintiff Darlette Staton ("Plaintiff" or "Ms. Staton") filed a response (ECF No. 10), and Defendant filed a reply (ECF No. 11). This court presides fully over this matter pursuant to 28 U.S.C. § 636(c), the unanimous consent of the parties (ECF No. 14), and the order of reference dated July 12, 2024 (ECF No. 15).

      The court has carefully considered the Motion, the associated briefing, and the applicable case law, and finds that oral argument would not materially assist in the disposition of the Motion. For the reasons set forth below, the Motion is **GRANTED in part and DENIED IN PART**.

# BACKGROUND[1]

Ms. Staton began employment with USPS in 2016 when she was 53 years old. Am. Compl. ¶¶ 1, 19. In May 2017, she was diagnosed with carpal tunnel syndrome and related conditions, including tendinitis, which she attributes to "on-the-job injuries" at USPS. *Id.* ¶ 24.[2] In her pleading, Ms. Staton asserts that these conditions amount to a disability, *id.*, and for purposes of this order, the court accepts that Ms. Staton is disabled within the meaning of Section 504 of the Rehabilitation Act of 1973. *See* 29 U.S.C. § 794(a) ("No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program receiving Federal financial assistance or under any program or activity conducted by any Executive Agency or by the United States Postal Service."). To accommodate Ms. Staton's disability, USPS limited her to an eight-hour workday (with a requirement of no more than six hours per day of operating a vehicle) and a six-day work week. Am. Compl. ¶ 27.

---

[1] The following facts are drawn from the Second Amended Complaint (ECF No. 8-1, "Amended Complaint" or "Am. Compl.") and are taken as true for purposes of the Motion. The court also considers Ms. Staton's EEO Complaint of Discrimination dated November 21, 2020 (ECF No. 1-1), and the related Notice of Final Action dated September 6, 2023, ECF No. 1-2, both of which were appended to the original complaint in this matter and are referenced in the Amended Complaint. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (setting forth exceptions to general rule that sufficiency of a complaint rests on its contents alone, including "documents that the complaint incorporates by reference"); *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) ("[I]n deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as exhibits to the complaint.").

[2] It is unclear from Ms. Staton's pleading what position she held with USPS in May 2017 or how her working conditions at the time triggered her disability.

From April 2018 to December 2022, Ms. Staton worked as a mail carrier at the United States Post Office in Littleton, Colorado ("Littleton Post Office" or "Post Office"), where she was assigned Route 2020. *Id.* ¶ 22. During the approximately four-and-a-half years she worked there, Ms. Staton filed three equal employment opportunity ("EEO") charges.

The first EEO charge covered events that occurred between October 2018 and February 2019, including Ms. Staton's complaint that she was improperly subjected to a period of leave without pay in December 2018—an issue she eventually resolved through the USPS collective bargaining process. *Id.* ¶¶ 33-38, 41, 46. Ms. Staton settled the first charge at the phase of the proceedings before the Equal Opportunity Commission in December 2022. *Id.* ¶ 48.

Ms. Staton filed a second charge of discrimination on December 7, 2020, in which she alleged discrimination and retaliation on the basis of disability and age. *Id.* ¶ 75; ECF No. 1-1 at 1 ("Second Charge").[3] In the Second Charge, Ms. Staton complained of events commencing in August 2020 and continuing through October 2020, when she initiated an informal EEO complaint that culminated in the filing of the Second Charge. Am. Compl. ¶¶ 49-50, 52, 56, 59, 61, 65-67, 70-72; Second Charge at 6 (asserting that Plaintiff received two "Letters of Warning" within a week after she filed "a second informal EEO complaint in October 2020").[4] The Second Charge sets forth eight "Claims," all of which generally allege that Post Office officials discriminated against Ms. Staton by refusing to address her complaints concerning her

---

[3] Ms. Staton also alleged discrimination on the basis of her sex, *see* Second Charge at 1, but she is not pursuing a sex discrimination claim in this litigation.

[4] Ms. Staton separately alleges that she received the Letters of Warning after filing the Second Charge, Am. Compl. ¶ 76, but, as further discussed below, it is clear from the Second Charge itself that the Letters were issued after she submitted her second informal complaint of discrimination and *before* she filed the Second Charge. Second Charge at 6.

"overburdened" mail route and by subjecting her work to heightened scrutiny. Second Charge at 4-7. On September 6, 2023, the EEOC issued a Notice of Final Action on the Second Charge, in which Ms. Staton was notified that USPS had adopted the final decision of an EEOC administrative law judge who had concluded that Ms. Staton had not shown that she was the victim of illegal discrimination. ECF No. 1-2 at 1.[5]

A third EEO charge filed in August 2021 covered events that post-dated the Second Charge, including Ms. Staton's suspension without pay and termination from USPS. *See generally* Am. Compl. ¶¶ 76-102 (allegations under heading "Post Charge Harassment, Retaliation and Hostile Work Environment"). Ms. Staton's termination from USPS—which was ultimately revoked—stemmed from allegations that she assaulted fellow USPS employee Teresa Panos during a meeting on March 26, 2021. *Id.* ¶ 84. Ms. Staton, who was then a union steward, had a disagreement with Ms. Panos about the handling of certain union grievance materials, during which Ms. Staton alleges that she stood up from her chair to reach for the union materials that Ms. Panos was attempting to take with her in leaving, "the mere act of which blocked the exit door" from the room where the two were meeting. *Id.* ¶¶ 88-94. While no criminal charges were filed, USPS placed Ms. Staton on "emergency off-duty status without pay" because of Ms. Panos's allegations that in this conduct, Ms. Staton had assaulted her. *Id.* ¶ 98. USPS issued a Notice of Removal on May 19, 2021, informing Ms. Staton that she would be terminated for "Unacceptable Conduct," and she was in fact terminated on June 18, 2021. *Id.* ¶¶ 99, 101.

On August 17, 2021, Ms. Staton and USPS arrived at a settlement of the third charge during a union arbitration process in which USPS agreed to reinstate her and to compensate her

---

[5] The decision of the administrative law judge is not in the record here.

for lost wages and benefits. *Id.* ¶ 105. At some point following that settlement, Ms. Staton withdrew the third charge. *Id.* ¶ 106. She returned to duty at USPS on October 4, 2021. *Id.* ¶ 107. She apparently worked there in some capacity until December 2022, when she had surgery for her disability that "ended her ability to perform as a City Carrier." *Id.* ¶ 25.

USPS moves to dismiss three of Ms. Staton's four remaining claims: Claims One and Two, alleging disparate treatment and retaliation in violation of Section 504 of the Rehabilitation Act, Am. Compl. ¶¶ 118-140, and Claim Three, a disparate treatment claim brought under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA"). *Id.* ¶¶ 141-148.[6] As to Claims One through Three, USPS argues that Ms. Staton has failed to exhaust any claim premised on certain discrete acts of discrimination and that, setting aside these unexhausted allegations, the remaining factual allegations fail to state a plausible claim for relief.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), the court may dismiss a claim for "failure to state a claim upon which relief can be granted." When considering a Rule 12(b)(6) motion, the court must "accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). Well-pleaded factual allegations "require[ ] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S.

---

[6] USPS does not seek dismissal of Claim Four, in which Ms. Staton alleges that she was subjected to a hostile work environment because of her disability. Am. Compl. ¶¶ 149-151.

662, 678 (2009). "An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court should then identify the well-pleaded factual allegations and "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

In analyzing Ms. Staton's claims, the court first identifies the scope of the allegations properly before the court by evaluating the threshold issue of exhaustion. Next, the court turns to the question of whether the exhausted allegations suffice to state a plausible claim for relief under the Rehabilitation Act or the ADEA.

## I.    Unexhausted Claims

The parties argue at some length about exhaustion and whether it is proper to decide that issue on a motion to dismiss. Motion at 7-8; Response at 10-13. However, the law is clear that a court may grant a motion to dismiss under Rule 12(b)(6) based on the affirmative defense of lack of exhaustion if the grounds for the defense are apparent on the face of the complaint. *Cirocco v. McMahon*, 768 F. App'x 854, 858 (10th Cir. 2019) ("Although failure to exhaust is now an affirmative defense, it may be raised in a motion to dismiss when the grounds for the defense

appear on the face of the complaint.") (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *accord, e.g.*, *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018); *Aguilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *Tiger v. Powell*, No. 21-cv-01892-PAB-SKC, 2022 WL 4182413, at *9 (D. Colo. Sept. 13, 2022). This court therefore may consider USPS's argument that Ms. Staton has failed to exhaust certain allegations and claims in this matter.

"Federal employees alleging discrimination or retaliation prohibited by . . . the Rehabilitation Act must comply with specific administrative complaint procedures in order to exhaust their administrative remedies." *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020) (quoting *Showalter v. Weinstein*, 233 F. App'x 803, 804 (10th Cir. 2007)); *see also* 29 U.S.C. § 626(d)(1) (ADEA's administrative-exhaustion process expressly applies to "civil action[s]").[7] These procedures, which are set forth in Part 1614 of Chapter 29 of the Code of Federal Regulations, require that an employee file a lawsuit in federal district court within 90 days of either the final decision by the agency, or following an appeal, the decision of an EEOC administrative law judge.

The record shows that Ms. Staton settled her first charge of discrimination, which encompassed her placement on leave without pay in December 2018, Am. Compl. ¶¶ 35-38, 47-48, and withdrew her third charge, which incorporated events post-dating the Second Charge in December 2020—including her suspension without pay commencing on March 26, 2021, and

---

[7] As a federal employee also covered by a collective bargaining agreement and whose federal employer—USPS—is not subject to 5 U.S.C. § 7121(d), Ms. Staton was allowed to "proceed with an EEO complaint under Part 16 regardless of whether or not a union grievance is also in process, except that the agency may hold certain time limits in abeyance while a grievance is being processed." *Hickey*, 969 F.3d at 1119 (citing 29 C.F.R. § 1614.301(c)).

her termination from USPS on June 18, 2021. *Id.* ¶¶ 101, 105-106. In settling and withdrawing

these charges, Ms. Staton did not obtain a final agency decision or a decision by an EEOC

administrative law judge, and so she failed to exhaust the events contained in those charges for

purposes of her disability- and age-based disparate treatment and retaliation claims. *See, e.g.*,

*Apsley v. Boeing Co.*, 691 F.3d 1184, 1210 (10th Cir. 2012) ("[A]dministrative remedies

generally must be exhausted as to each discrete instance of discrimination or retaliation.");

*Goodson v. DeJoy*, No. 22-1338, 2023 WL 4782947, at *5 (10th Cir. July 27, 2023)

("Administrative remedies generally must be exhausted as to each discrete instance of alleged

failure to accommodate.") (citing *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1181 (10th Cir.

2018)).

Ms. Staton does not dispute this conclusion. She acknowledges that she "*does not assert

claims* related to her already resolved 2018 leave without pay charge or 2021 suspension and

termination (handled by the union)." Response at 2 n.1 (emphasis added). Rather, she explains

that she "relies only on the 2018 and 2021 charges [the first and third charges] to the extent that

they provide factual background information to the subject claims which are only associated with

charge two, which has been properly exhausted." *Id.* at 12.[8] Respectfully, the court disagrees. For

---

[8] As Ms. Staton's explanation reflects, allegedly discriminatory or retaliatory acts that are
untimely "may constitute relevant background evidence in a proceeding in which the status of a
current practice is at issue." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112 (2002)
(quoting *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977)). Whether evidence of
unexhausted allegations of discrete discriminatory actions may be relevant to establish Ms.
Staton's claims under the Rehabilitation Act is a question the court need not resolve at this time.
*See id.* at 117 ("It does not matter, for purposes of [Title VII], that some of the component acts of
the hostile work environment fall outside the statutory time period. Provided that an act
contributing to the claim occurs within the filing period, the entire time period of the hostile

instance, each of Ms. Staton's claims expressly incorporates by reference all paragraphs above. Claim Two specifically alleges (in part) Ms. Staton's filing of the First Charge as a protected activity for which USPS retaliated. Am. Compl. ¶ 132. Claim Three alleges USPS discriminated against Ms. Staton in giving preferential scheduling treatment to younger employees. *Id*. ¶ 144(a). But she does not make that allegation in the Second Charge. *See* ECF No. 1-1, *passim*.

Thus, any disparate treatment and retaliation claims based on the discrete incidents of discrimination alleged in Ms. Staton's first and third charges—including her placement on leave without pay in December 2018, her suspension without pay commencing on March 26, 2021, and her termination from USPS on June 18, 2021—are barred, and Ms. Staton's Second Charge defines the scope of all properly-exhausted claims that may proceed in this court. Accordingly, the Motion to Dismiss is **granted** insofar as it seeks dismissal of any discrete claim of discrimination based on the First and Third Charges.[9] Any such claim—including without limitation the portion of Claim Two that relies on the First Charge in Paragraph 132 and the portion of Claim Three that relies on Paragraph 144(a)—is hereby **dismissed without prejudice**. *See*, *e.g.*, *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) (recognizing that a dismissal based on a failure to exhaust administrative remedies is ordinarily without prejudice).

---

environment may be considered by a court for the purposes of determining liability."). Thus, the dismissal of Ms. Staton's unexhausted allegations has no effect on the scope of evidence she may present in support of her claims. *See id*. at 113 ("Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.").

[9] USPS does not dispute, at least at this stage of the case, that Ms. Staton properly completed the exhaustion process for the actions delineated in the Second Charge. *See* Motion at 9 n.5 (raising a question as to whether all allegations in the Second Charge were timely exhausted, but confirming that "USPS does not now seek dismissal on exhaustion grounds for the actions raised in the Second Charge").

The court now turns to the question of whether the exhausted allegations—i.e., those that Ms. Staton stated in the Second Charge—suffice to state any plausible claim under the Rehabilitation Act or the ADEA.

## II.    Rehabilitation Act Claims

In Claims One and Two, Ms. Staton asserts that she was subjected to discrimination and retaliation because of her disability in violation of the Rehabilitation Act. Am. Compl. ¶¶ 118-140.

To state a disparate treatment claim under the Rehabilitation Act, Ms. Staton must allege facts plausibly showing that she suffered an adverse employment action because of her disability. *Hampton v. Utah Dep't of Corr.*, 87 F.4th 1183, 1197 (10th Cir. 2023) (elements of a discrimination claim under the Rehabilitation Act are that "(1) [she] is disabled; (2) [she] is qualified to perform the essential functions of the job with or without accommodation; and (3) [she] suffered an adverse employment action because of [her] disability") (citing *Edmonds-Radford v. Sw. Airlines Co.*, 17 F.4th 975, 989-90 (10th Cir. 2021)); *see also Morman v. Campbell Cnty. Memorial Hospital*, 632 F. App'x 927, 933 (10th Cir. 2015) (cleaned up) (observing that the court "can evaluate [a plaintiff's disability discrimination] claim's plausibility only by considering the prima facie case of discrimination that she would need to prove in court," and requiring that a plaintiff "allege facts that make such a claim at least plausible").

With regard to the third element of a disability discrimination case under the Rehabilitation Act, the well-pleaded facts must support a reasonable inference that Ms. Staton's disability was the "sole cause" of the adverse action. 29 U.S.C. § 794(a) ("solely by reason of her or his disability"). *See, e.g.*, *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1313 (10th Cir. 2021)

(recognizing that there are different causation standards under the Americans with Disabilities Act and the Rehabilitation Act, and holding that "the ADA merely requires that the plaintiff's disability be a but-for cause (i.e., 'by reason of') the discrimination, rather than—as the Rehabilitation Act requires—*its sole cause* (i.e., 'solely by reason of')") (emphasis added); *Williams v. Colorado Dep't of Corr.*, No. 21-cv-02595-NYW-NRN, 2024 WL 3069274, at *5 (D. Colo. June 20, 2024) (recognizing "sole cause" standard for Rehabilitation Act claims) (citing *Crane*, 15 F.4th at 1313).

To state a retaliation claim premised on disability, Ms. Staton must plead facts plausibly demonstrating "(1) that [the employee] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Brown v. Austin*, 13 F.4th 1079, 1090 (10th Cir. 2021) (quoting *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1051 (10th Cir. 2011)).

Here, as noted above, USPS does not contest that Ms. Staton's physical afflictions constitute a disability within the meaning of the Rehabilitation Act, nor does USPS assert that Ms. Staton has failed to allege she was qualified for the position of mail carrier. USPS does, however, challenge the sufficiency of Ms. Staton's pleading insofar as it purports to allege the existence of any legally-cognizable adverse action, much less one that is causally connected to her disability. Motion at 12-14. The court will address these purported pleading deficiencies for the disparate treatment and retaliation claims, in turn.

A.      **Disparate Treatment**

1.      **Adverse Employment Action Requirement**

The Tenth Circuit has long adhered to a liberal interpretation of the term "adverse employment action." *See, e.g.*, *Hampton*, 87 F.4th at 1199 ("Our circuit 'liberally defines' the phrase 'adverse employment action.") (cleaned up, quoting *Stinnett v. Safeway, Inc*., 337 F.3d 1213, 1217 (10th Cir. 2003)). Even so, the Court of Appeals construed the term to require "a *significant change* in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Sanchez* v. *Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998), *abrogated by Muldrow v. City of St. Louis*, 601 U.S. 346 (2024) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (emphasis added)); *accord, e.g.*, *Brown*, 13 F.4th at 1090 ("an adverse action is generally one that causes a significant change in employment status or benefits"). However, the legal landscape for assessing adverse employment actions has recently changed.

In April 2024, the Supreme Court clarified the standard for what constitutes an actionable adverse employment action for purposes of claims under the federal anti-discrimination statutes. In *Muldrow*, which was a Title VII case, the Supreme Court explicitly abrogated the "significant change" standard in *Sanchez* and cases from multiple Circuit Courts that had imposed a similarly "heightened threshold of harm—be it dubbed significant, serious, or something similar." *See* 601 U.S. at 353 & n.1 (abrogating, in addition to *Sanchez*, the adverse-action standards in *Muldrow*, 30 F.4th 680, 688 (8th Cir. 2022) ("materially significant disadvantage"); *Caraballo-Caraballo v. Correctional Admin.*, 892 F.3d 53, 61 (1st Cir. 2018) ("materially changes" employment conditions in a manner "more disruptive than a mere inconvenience or an alteration of job

responsibilities"); *Williams v. R. H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) ("materially significant disadvantage"); *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir. 2004) ("significant detrimental effect"); *O'Neal* v. *Chicago*, 392 F.3d 909, 911 (7th 2004) ("materially adverse"); and *Webb-Edwards v. Orange Cnty. Sheriff's Office*, 525 F.3d 1013, 1033 (11th Cir. 2008) ("serious and material change")).

In disapproving the approach adopted in these cases, the Supreme Court began with Title VII's language prohibiting "'discriminat[ing] against' an individual 'with respect to' the 'terms [or] conditions' of employment because of that individual's sex." *Muldrow*, 601 U.S. at 354. That language requires a showing of "some 'disadvantageous' change in an employment term or condition." *Id.* at 354 (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998)). The words "discriminate against" "refer to 'differences in treatment that injure' employees." *Id.* (quoting *Bostock v. Clayton Cnty.*, 590 U.S. 644, 681 (2020)). The statute thus targets employment practices that "'treat[] a person worse' because of sex or other protected trait." *Id.* (quoting *Bostock*, 590 U.S. at 658). From these principles, the Court rejected the "high bar" of a "significance test" for adverse employment actions. *Id.* at 350. Instead:

> To make out a Title VII discrimination claim, [an employee] must show *some harm* respecting an identifiable term or condition of employment. What [the employee] does not have to show, according to the relevant text [of Title VII], is that the harm incurred was "significant."

*Id.* at 354-55 (cleaned up, emphasis added); *id.* at 350 (finding that "Title VII's text nowhere establishes that high bar [of a significance test]"). While the Tenth Circuit has yet to specifically

opine on the question,[10] this court anticipates the newly-clarified "some harm" standard for adverse actions would apply with equal force to claims brought under the Rehabilitation Act. *See, e.g.*, *Hollingsworth v. Vilsack*, No. CV 23-2427 (LLA), 2024 WL 4332118, at *9-10 (D.D.C. Sept. 27, 2024), *appeal filed*, No. 24-5267 (D.C. Cir. Nov. 21, 2024) (applying the *Muldrow* adverse-action standard to discrimination claim brought under the Rehabilitation Act); *Florek v. Creighton Univ.*, No. 8:22CV194, 2024 WL 4581466, at *19 (D. Neb. Oct. 18, 2024) (observing that, "[l]ike Title VII, there is no requirement in the text of [the Rehabilitation Act] of serious, material, or 'objectively tangible harm,'" in applying *Muldrow's* holding to a claim brought under the Rehabilitation Act).[11]

    Ms. Staton exhausted six allegedly adverse employment actions in the Second Charge:

1. During the week of August 14, 2020, Ms. Staton was threatened with "Failure to Follow" discipline after she could not complete the delivery of mail on her "overburdened route"[12] and returned to the Post Office with "mail for other carriers

---

[10] As of the date of this order, this court has located no Tenth Circuit opinion, published or unpublished, referencing *Muldrow*.

[11] The parties briefed the Motion to Dismiss before *Muldrow* was decided, but this court will apply the "some harm" standard in assessing the plausibility of Ms. Staton's disability discrimination claim. *See Hollingsworth*, 2024 WL 4332118, at *8 (applying *Muldrow* in assessing a previously-filed motion to dismiss) (citing *Thorpe v. Hous. Auth. of Durham*, 393 U.S. 268, 281 (1969) (explaining that courts must apply the law in effect at the time of decision); *Overseas Shipholding Grp., Inc. v. Skinner*, 767 F. Supp. 287, 291 (D.D.C. 1991) ("[T]he Court must review the agency's decision under the lens of current legal precedent.")). The court notes that neither party requested supplemental briefing post-*Muldrow*.

[12] USPS argues that Ms. Staton "did not exhaust her assignment to Route 2020 in her Second charge," and that her route assignment was addressed in the first charge. Reply at 4. The court understands the Second Charge to assert that Ms. Staton continued to be subjected to, and to seek redress for, the "overburdened" route during the period covered by the Second Charge, and therefore declines, at the motion-to-dismiss stage, to read the Second Charge so narrowly.

to deliver." Second Charge at 4[13]; Am. Compl. ¶ 56.

2.  In August 2020, Ms. Staton was singled out by the Littleton Postmaster for "red flag[ging]" when she did not "complete her route within an appropriate timeframe." Second Charge at 5; Am. Compl. ¶¶ 59-60.

3.  On September 8, 2020, USPS conducted a "street observation" of Ms. Staton, which resulted in an "investigative interview" for "backing up" her postal vehicle, even though the USPS then "had no policy prohibiting a City Carrier from backing their postal vehicle." Second Charge at 5; Am. Compl. ¶ 62. Additionally, Ms. Staton was subjected to more "street observations" than any other carrier at the Littleton Post Office. Second Charge at 6; Am. Compl. ¶¶ 61, 63, 74.[14]

4.  On September 11, 2020, Ms. Staton was denied "auxiliary assistance" on her route and received a verbal reprimand for wasting time in completing her route, which was "overburdened" and "in clear need of an audit." Second Charge at 5; Am. Compl. ¶¶ 65-66.

5.  On September 23, 2020, Ms. Staton was again threatened with disciplinary action for unauthorized overtime and was simultaneously informed that her request for a "Special Investigation" of her route was denied. Second Charge at 5[15]; Am. Comp. ¶¶ 49-50.

---

[13] The Second Charge also states that Ms. Staton was subjected to harassment when she returned from her route with undelivered mail, Second Charge at 5-6, but USPS has not moved to dismiss any hostile work environment claim and so the court does not consider this, or any other, statements concerning harassment in the Second Charge or in the Amended Complaint.

[14] In the Second Charge, Ms. Staton also references being put through more "volume counts" than other carriers, *id.* at 5, but she does not make any allegations about the numerosity of "volume counts" in her Amended Complaint.

[15] According to Handbook M-239, *Management of Delivery Services*, for the National Association of Letter Carriers, "[s]pecial route inspections may be required" when "[a] carrier requests a special inspection and it is warranted," when a "carrier consistently leaves and/or returns late," or when other circumstances are present. *See* https://www.nalc.org/workplace-issues/resources/manuals/m-39/M-39.PDF at 161-62; *see also* Second Charge at 5 (referencing this component of the handbook) and 9 (denial of Staton's request for special inspection, noting that "[a] letter carrier who is limited to eight hours of duty may still qualify for a special route inspection if no other limitation exits [sic] which could distort a proper evaluation").

6.  On October 19, 2020, USPS management conducted "an 1838-C Carrier Count"—presumably to ascertain how much mail Ms. Staton was required to handle on her route—but "she was instructed not to verify the count." Second Charge at 6; Am. Compl. ¶ 72.

This court would be inclined to agree with USPS that, pre-*Muldrow*, none of the these actions would have sufficed to allege "a *significant change* in employment status or benefits" so as to plausibly show a discrete adverse employment action. Motion at 9 (citing *Brown*, 13 F.4th at 1092) (emphasis added). But post-*Muldrow*, "significant change" is no longer the standard, and the new criterion of "some harm" to the terms and conditions of conditions of Ms. Staton's employment appears to this court to encompass a significantly broader category of actions entitled to be called "adverse" than previously countenanced by the Tenth Circuit. *See id.* at 9-11 (discussing Tenth Circuit precedent pre-dating *Muldrow*).

Under the *Muldrow* framework, Ms. Staton's well-pleaded, exhausted allegations—being threatened with discipline, "red-flagged," and generally subjected to heightened scrutiny at work; and being denied requests for inspection of, and assistance with, her mail route—suffice to show, at the pleading stage, a "negative[] impact[]" on "her work environment" and, thus, "some harm" to the terms and conditions of her employment. *See Hollingsworth*, 2024 WL 4332118 at *9 (citing *Muldrow*, 601 U.S. at 350). It is the case that "some of these claims seem like mere workplace disputes," but "if they were motivated by discriminatory animus"—and Ms. Staton alleges that they were, *see, e.g.*, Am. Compl. ¶¶ 58, 122—"they are actionable." *Id.*; *see also Muldrow*, 601 U.S. at 365 (Kavanaugh, J., concurring in the judgment) ("[T]he text of Title VII does not require a separate showing of some harm. *The discrimination is harm*.") (emphasis added). Ms. Staton's pleading therefore has cleared "*Muldrow's* low bar" on the adverse action

16

point. *Hollingsworth*, 2024 WL 4332118, at *9; *see also Turner v. Buttigieg*, No. CV 23-1665 (LLA), 2024 WL 4346332, at *8 (D.D.C. Sept. 30, 2024) (holding that an evaluation in which the employee was rated as "exceeds expectations" instead of "outstanding" met "the standard of 'some harm' to the terms and conditions of [the plaintiff's] employment under *Muldrow* because it represents a change that negatively impacted her work environment").

In so finding, this court emphasizes that it currently lacks specific guidance from the Tenth Circuit concerning the application of *Muldrow's* "some harm" standard to the particular actions at issue here—including mere threats of disciplinary action that, seemingly, never materialized. Still, the plain language of *Muldrow* compels this court to conclude that Ms. Staton's complaint suffices to meet the Supreme Court's newly-clarified standard for pleading an adverse employment action for each of the six adverse actions exhausted in the Second Charge.

## 2. Causal Connection Requirement

Ms. Staton has articulated relevant adverse actions as required to successfully state a claim for disability discrimination. That conclusion, however, does not end the evaluation of the plausibility of her claim. The court next must analyze whether Ms. Staton has sufficiently alleged that her disability was the "sole cause" of each of these adverse actions. *Crane*, 15 F.4th at 1313. For the reasons that follow, the court finds—at the motion-to-dismiss stage—that Ms. Staton has satisfied this elemental obligation for five of the six exhausted adverse actions, but that her pleading falls short on the sixth.

### a. Adverse employment actions numbers 1, 2, 4, 5, and 6

These adverse actions hinge on USPS's alleged response to Ms. Staton's disability and the attendant compromise of her ability to timely complete delivery of a mail route she

characterizes as "overburdened."

To recap the allegations underlying each of these adverse actions, with regard to adverse action number 1, Ms. Staton was threatened with discipline because she physically lacked the ability "to complete the route within her medical restrictions" during an eight-hour work day. Am. Compl. ¶ 56. Adverse action number 2 is premised on Ms. Staton being singled out for "red flagging"—which the court understands generally to signify heightened scrutiny of her actions in the workplace—when she was unable to "complete her route within an appropriate timeframe" because of her disability-related work restrictions. *Id.* ¶¶ 59-60, 151(a). Adverse action number 4 focuses on USPS denying Ms. Staton's requests for "auxiliary assistance," or additional help, with her route, which she could not complete "within her medical restrictions." *Id.* ¶¶ 57-58.

Adverse action number 5 addresses another threat of disciplinary action against Ms. Staton, this time for unauthorized overtime, which Ms. Staton asserts forced her "to finish an overburdened route within eight hours"—something she asserts she physically could not do. *Id.* ¶ 67. At the same time, USPS denied Ms. Staton's request for a "special inspection" of her route and, in so doing, explicitly noted that such inspections were not warranted where "other limitation exits [sic] which could distort a proper evaluation." *Id.* ¶ 70; Second Charge at 9. Ms. Staton asserts that this statement creates "the inference that, according to USPS, [her] disability was an 'other limitation' that would have distorted the special inspection." Am. Compl. ¶ 50. Finally, adverse action number 6 relates to a "carrier count" and USPS management's instruction not to verify the count, *id.* ¶¶ 70-72, from which the court reasonably infers that USPS effectively thwarted the creation of an accurate accounting of the scope of mail Ms. Staton was obliged to deliver during the six hours she was allowed to drive a postal vehicle. Am. Compl.

¶ 27 (Staton's disability restrictions included operating a vehicle no more than six hours per day). And Ms. Staton plausibly has alleged that USPS management personnel were aware of her disability at the time each of these adverse employment actions were undertaken. *See id.* ¶¶ 57, 59, & *passim*.

USPS argues that Ms. Staton has failed to allege facts plausibly showing that her disability was the sole cause of any adverse action, *see* Motion at 12-13,[16] but this court is respectfully unpersuaded by its analysis. At this stage of the case, the court finds that Ms. Staton's allegations sufficiently support an inference that adverse employment actions 1, 2, 4, 5, and 6 were precipitated solely by reason of her disability. Ms. Staton directs the court to supporting evidence, articulated in well-pleaded facts, illustrating USPS's refusal to address issues concerning her disability that prevented her from timely completing her route and that, from her perspective, triggered multiple negative consequences. These allegations are not vague, nor do they reflect a mere "formulaic recitation of the elements of a cause of action, which the [Supreme] Court stated will not do." *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (cleaned up, quoting *Twombly*, 550 U.S. at 555).

In sum, the court finds that Ms. Staton's allegations are sufficient at this stage of the case to tie the articulated adverse employment actions to her protected class and to allow the court to infer direct discriminatory animus by USPS based solely on her disability. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

---

[16] USPS does not address the causation requirement for the Rehabilitation Act disparate treatment claim in its reply brief. *See generally* Reply.

Accordingly, the Motion to Dismiss is **denied** with respect to Claim One insofar as it seeks dismissal of any claim based on adverse employment actions numbers 1, 2, 4, 5, and 6.

### b.    Adverse employment action number 3

The remaining adverse employment action, action number 3, is in a somewhat different posture from the others. Recall that this adverse action asks the court to infer discrimination based on a comparison of Ms. Staton with other mail carriers, in that she allegedly was subjected to more "street observations"—including "an impromptu street observation" in which she was seen to have improperly (according to USPS) backed up her postal vehicle—than any other carrier in the Littleton Post Office. Second Charge at 5; *see also* Am. Compl. ¶ 74 ("As of December 2020, USPS had conducted at least eight street observations of Ms. Staton in the preceding eight weeks, a volume that, upon information and belief, far exceeded the number of observations experienced by any other City Carrier at [the Littleton Post Office], including those similarly situated and those under work restrictions."). In contrast with Ms. Staton's other allegations concerning adverse actions, which this court has found plausibly evince direct evidence of discriminatory intent, Ms. Staton asks the court in adverse employment action number 3 to infer that USPS possessed discriminatory intent by pointing to "similarly situated" employees without disabilities[17] who were treated "more favorably" than herself with regard to

---

[17] Other persons with a disability are not relevant comparators under the Rehabilitation Act. *See Hwang v. Kansas State Univ.*, 753 F.3d 1159, 1164 (10th Cir. 2014) (Gorsuch, J.) ("a plaintiff must allege facts suggesting *non-disabled*—but otherwise similarly situated—employees receive more favorable treatment") (emphasis added); *see also, e.g.*, *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1102 (10th Cir. 1999) (recognizing, in holding that the Americans with Disabilities Act does not prohibit distinguishing between physical and mental disabilities, that "the ADA does not mandate equality between individuals with different disabilities") (quoting *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1019 (6th Cir. 1997) (en banc)).

the number of "street observations." *See Beasley v. Kendall*, No. 22-cv-00971-NYW-MDB, 2023 WL 2824415, at *7 (D. Colo. Feb. 6, 2023), *report and recommendation adopted*, 2023 WL 2824402 (D. Colo. Feb. 22, 2023) ("When a plaintiff does not purport to have direct evidence of discriminatory intent, such intent is commonly established by showing that 'similarly situated employees' were treated 'more favorably' than the plaintiff.") (citing *Brown v. Esper*, No. 17-cv-02004-RM-STV, 2019 WL 6893019, at *5 (D. Colo. Dec. 18, 2019), *aff'd sub nom. Brown v. Austin*, 13 F.4th 1079 (10th Cir. 2021)); *Glover v. NMC Homecare, Inc.*, 13 F. App'x 896, 907 (10th Cir. 2001) (explaining that an employee can "show pretext on a theory of disparate treatment by providing evidence that he was treated differently from other similarly situated, nonprotected employees *who violated work rules of comparable seriousness*") (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000)) (emphasis in original); *Fox v. Nicholson*, 304 F. App'x 728, 730 (10th Cir. 2008) ("A showing that similarly situated employees were treated differently is not 'an indispensable element of the prima facie case,' although it may be relevant to show the existence or absence of the third element of discrimination.") (internal citation omitted).

The fatal defect in Ms. Staton's pleading with regard to adverse employment action number 3 is that she pleads no facts whatsoever concerning those "similarly situated" persons with whom she purports to compare herself, "let alone facts suggesting they are like her in any relevant way." *See Hwang*, 753 F.3d at 1164. For example, there are no facts indicating that anyone in this comparator group consistently complained about the volume of mail on his or her route, asserted that it was "overburdened," or routinely returned to the Post Office with mail that other carriers were obliged to deliver—all issues that, by her own admission, plagued Ms. Staton.

Nor has Ms. Staton alleged any other facts that would allow this court to infer discriminatory animus from USPS's decision to conduct multiple observations of her work. Indeed, an equally plausible inference to draw from the number of observations is that USPS officials acted in response to her complaints and desired to understand more clearly the circumstances that were prompting them. *Cf. Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'") (quoting *Twombly*, 550 U.S. at 557) (cleaned up). And with regard to USPS's decision to conduct an "investigative interview" following its observation that Ms. Staton backed up her postal vehicle, Am. Compl. ¶ 62, she pleads no facts plausibly indicating that any non-disabled USPS employee who was seen to have done the same thing was not required to participate in such an interview. Ms. Staton thus has failed to allege that the decision to investigate the backing-up incident bears any connection to her disability.

While Ms. Staton was not obliged "to incant any particular litany of facts to support a claim of differential treatment, [she *does*] have to allege some set of facts that taken together plausibly suggest differential treatment of similarly situated employees." *Hwang*, 753 F.3d at 1164-65 (citing *Khalik v. United Air Lines*, 671 F.3d 1188, 1193-94 (10th Cir. 2012) (emphasis in original); *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006)). This Ms. Staton has failed to do. Her bare assertion that she is "similarly situated" to other employees," *see* Am. Compl. ¶ 74, is just a legal conclusion, and "a legal conclusion is never enough." *Hwang*, 753 F.3d at 1164; *see also Bekkem v. Wilkie*, 915 F.3d 1258, 1275 (10th Cir. 2019) (same) (quoting *Hwang*); *cf. Iqbal*, 556 U.S. at 679 (stating that legal conclusions "are not entitled to the assumption of truth" and "must be supported by factual allegations").

Ms. Staton argues that she does not yet have access to the full scope of information concerning "Defendant's decision-making process and the considerations made related to the adverse employment actions alleged throughout the Complaint." Response at 7. That may be, but the same could be said of almost every plaintiff at the outset of nearly every case. As the Supreme Court has emphasized, while "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. 678-79; *see also Sheldon v. Khanal*, 502 F. App'x 765, 773 (10th Cir. 2012) )"[D]iscovery is not necessary to resolve a motion to dismiss for failure to state a claim for relief; the court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.") (cleaned up, quoting *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010)). Even without discovery, Ms. Staton is in a position to know facts indicating that USPS treated her less favorably than a specific, similarly situated comparator. She should know such facts, if any exist, simply by virtue of having worked at the Littleton Post Office and engaged in day-to-day interactions with management and co-workers." *See* Am. Compl. ¶ 83; *see also Khalik*, 671 F.3d at 1194 (observing that an employee "should know details about how Defendant treated her compared to other non-Arabic or non-Muslim employees," among other information, and affirming the dismissal of her complaint which "offer[ed] none of this detail"). Yet, she pleads no such facts.

At bottom, Ms. Staton's pleading fails to allege any non-conclusory facts connecting adverse employment action number 3 to her disability. Her allegations being too threadbare to

demonstrate a causal connection between that adverse action and her disability, a disparate treatment claim based on that action is **dismissed**.

### B.   Retaliation

Claim Two, in which Ms. Staton asserts that she was subject to retaliation in violation of the Rehabilitation Act, Am. Compl. ¶¶ 127-140, has undergone some clarification during the course of briefing on the Motion to Dismiss. In her response, Ms. Staton explains that she relies on the Second Charge as the protected conduct on which she bases her retaliation claim. Specifically, she cabins the allegedly retaliatory conduct to her receipt of two Letters of Warning "following her filing of the Second Charge of Discrimination." Response at 8 (citing Am. Compl. ¶¶ 76-80). She also characterizes as retaliatory conduct "an Observation of Driving Practices" which USPS personnel conducted on March 25, 2021. *Id.* at 8-9 (citing Am. Compl. ¶ 81).

As an initial matter, the observation of Ms. Staton and her driving practices that occurred in March 2021 obviously was not exhausted in the Second Charge, which was filed on December 7, 2020. *See* Am. Compl. ¶ 75. For the reasons previously discussed, the Second Charge defines the scope of claims Ms. Staton can pursue in this litigation, and therefore any purported retaliation that post-dates the Second Charge is unexhausted and therefore not actionable.

With regard to the two Letters of Warning, Ms. Staton's explanation of the grounds for claiming retaliation on that basis is somewhat at odds with the record. The protected conduct on which she relies—the December 2020 Second Charge—obviously *post-dates* the Letters of Warning, both of which were issued in October 2020. Response at 6-7 (describing the Letters as warning Staton about "backing up her vehicle for two feet" and making an unsafe left turn).

"[B]y its very nature, retaliatory conduct must come *after* the protected activity." *Kenfield v. Colo. Dep't of Public Health & Env't*, 557 F. App'x 728, 733 (10th Cir. 2014) (citing *Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir. 1996) (emphasis in original)). The protected activity of filing the Second Charge therefore could not have caused the allegedly discriminatory conduct underlying the pre-existing Letters of Warning. However, the court discerns from Ms. Staton's papers that her retaliation claim actually tees off what she describes as her "second *informal* EEO complaint," *see* Second Charge at 6 (emphasis added), which she submitted sometime in October 2020 and which predated the Letters of Warning by only one week. *Id.*[18]

In assessing whether Ms. Staton has plausibly alleged unlawful retaliation, the court begins by recognizing that *Muldrow* did not alter the requirement that a retaliatory action must be "'materially adverse,' meaning that it causes 'significant' harm." *See* 601 U.S. at 357 (declining to "import the [material adversity] standard into [Title VII's] anti-discrimination provision") (discussing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); *see also, e.g.*, *Hollingsworth*, 2024 WL 4332118, at *12 n.7 ("While the *Chambers* and *Muldrow* Courts changed the adverse-action standard for discrimination claims, both Courts clarified that the threshold did not change for retaliation claims, and thus the 'materially adverse' standard remains.") (citing *Chambers v. District of Columbia*, 35 F. 4th 870, 877 (D.C. Cir. 2022); *Muldrow*, 601 U.S. at 357-58)); *Stewart v. United States Dep't of Agric.*, No. 23-CV-1194

_____

[18] While the court is not bound to liberally construe Ms. Staton's filings because she is represented by counsel, *see Mann v. Boatright*, 477 F.3d 1140, 1148 n.4 (10th Cir. 2007), it does so in this instance, at this early stage of the case. It is apparent that the confusion regarding the pertinent protected activity is attributable to a simple error, and the court need not engage in a strained construction of the record to understand the pertinent timeline and the basis of Ms. Staton's argument.

(TSC), 2024 WL 4332618, at *6 (D.D.C. Sept. 27, 2024) (recognizing that material adversity remains the standard for evaluating retaliation claims post-*Muldrow*). Consequently, the material adversity standard governs this court's assessment of whether Ms. Staton has plausibly alleged that the Letters of Warning constitute actionable retaliation. *See Brown*, 13 F.4th at 1090 (prima facie case of retaliation under the Rehabilitation Act requires a showing "that a reasonable employee would have found the challenged action materially adverse").

To rise to the level of materially adverse, the action must be one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *See Burlington N.*, 548 U.S. at 68 (citation omitted). The Tenth Circuit has made clear that "[d]isciplinary proceedings, such as warning letters and reprimands, *can* constitute an adverse employment action" for purposes of a retaliation claim. *Medina v. Income Support Div., N.M.*, 413 F.3d 1131, 1137 (10th Cir. 2005) (emphasis added). A reprimand is an adverse employment action if it "adversely affects the terms and conditions of the plaintiff's employment—for example, if it affects the likelihood that the plaintiff will be terminated, undermines the plaintiff's current position, or affects the plaintiff's future employment opportunities." *Id*. Under this standard—although a close call—the court finds that Ms. Staton's pleading does enough to allege that the Letters of Warning constitute materially adverse employment actions.

Ms. Staton asserts that, within just a week of her initiating an informal complaint of discrimination, USPS issued both Letters, and she further contends that both Letters criticized her for trivial actions that did not jeopardize safety and that were not prohibited by USPS policy: backing up her vehicle just two feet (while "not near another vehicle") and executing "a legal left turn." *See* Am. Compl. ¶¶ 77, 79; *see also id.* ¶ 78 (Staton not aware of any USPS policy "that

prohibited the backing of a postal vehicle); *id.* ¶ 80 (Staton not aware of any "USPS policy prohibiting or even discouraging Letter Carriers from turning left"). So, according to Ms. Staton, she received formal discipline even though she did not engage in any misconduct. These facts plausibly indicate that the Letters of Warning were unwarranted and thus demonstrate the existence of inappropriate criticism of Ms. Staton's work that could have affected her position with USPS and her future employment prospects. These allegations are sufficient at the motion-to-dismiss stage to establish that the Letters of Warning would dissuade a reasonable employee from making or supporting a charge of discrimination. *See Dial v. McDonough*, No. 21-01071-KHV-ADM, 2022 WL 17289152, at *13 (D. Kan. Nov. 29, 2022) (finding that an "unwarranted letter of reprimand could dissuade a reasonable worker from making or supporting a charge of discrimination").

Ms. Staton therefore has plausibly established the second element of a retaliation claim, and the passage of just a week between the protected activity and the issuance of the Letters satisfies the causal connection element. *Cf. O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) ("Unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation."); *Kenfield*, 557 F. App'x at 733 ("Without other evidence, three or more months between the protected activity and the adverse action is insufficient to establish a causal connection.") (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997)). The court therefore **denies** that aspect of the Motion seeking dismissal of Ms. Staton's retaliation claim, which may proceed in accordance with the foregoing parameters, limited to the issuance of the

Letters of Warning.[19]

### III.    Age Discrimination Claim

In Claim Three, Ms. Staton asserts that she was discriminated against due to her age in violation of the ADEA. To successfully press a case of age discrimination, Ms. Staton must plausibly allege: "(1) she is a member of the class protected by the [ADEA]; (2) she suffered an adverse employment action; (3) she was qualified for the position at issue; and (4) she was treated less favorably than others not in the protected class." *Jones v. Oklahoma City Public Schs.*, 617 F.3d 1273, 1279 (10th Cir. 2010) (quotation omitted). The *Muldrow* "some harm" standard applies to adverse employment actions under the ADEA. *See, e.g.*, *Yates v. Spring Indep. Sch. Dist.*, 115 F.4th 414, 420 n.4 (5th Cir. 2024) (applying *Muldrow* to an ADEA claim and recognizing that "the core sections" of Title VII and ADEA "overlap almost identically") (cleaned up, quotation omitted); *Watkins v. Dep't of Justice*, No. CV 23-766 (RDM), 2024 WL 4362156, at *5 (D.D.C. Sept. 30, 2024) (applying *Muldrow* to an ADEA disparate treatment

---

[19] USPS also argues that the retaliation fails because Ms. Staton has not specifically alleged that "the relevant manager knew of the [protected] conduct"—here, the submission of the informal EEO charge in October 2020. Reply at 9 (citing *Littlefield v. Weld Cnty. School Dist.*, No. 22-cv-02241-PAB-KAS, 2023 WL 6962087, at *8 (D. Colo. Oct. 19, 2023)). USPS may well prevail on this argument at summary judgment, but the court respectfully declines to dismiss the retaliation claim on that basis at this stage of the case. Notably, *Littlefield* addressed the pleading requirements for a First Amendment retaliation claim. *Id.* at *8 (finding that the plaintiff failed to allege that his association with a church "was a 'substantial' or 'motivating' factor" underlying the alleged retaliatory actions, and observing that it is "[a]xiomatic to establishing causation in [the First Amendment retaliation] context . . . that the employer knew of the employee's protected conduct") (quoting *Hook v. Regents of Univ. of Cal.*, 394 F. App'x 522, 539 (10th Cir. 2010)). It is unclear to this court that a similar pleading mandate applies in the context of a claim asserting retaliation on the basis of disability, and USPS cites to no precedent supporting that proposition. This is a matter better addressed at summary judgment.

claim brought by a federal employee). The court is also guided by the principle that, for an ADEA claim brought by a former federal-sector employee like Ms. Staton, "age must be a but-for-cause of discrimination—that is, of *differential treatment*—but not necessarily a but-for cause of a personnel action itself." *Babb v. Wilkie*, 589 U.S. 399, 406 (2020) (emphasis added); *see also id.*at 402 (stating that the "plain meaning" of 29 U.S.C. § 633a(a)—that personnel actions be "made free from any discrimination based on age"—is "that personnel actions be untainted by any consideration of age").

The allegations concerning age in the Amended Complaint, though very sparse, hinge on two core points. First, Ms. Staton contends that "younger employees who engaged in substandard performance" were given "preferential treatment" in the realm of scheduling and receiving "more days off than were provided to Ms. Staton." Am. Compl. ¶¶ 144(a), 145. Second, she emphasizes her "overburdened route," which USPS forced her to complete "within eight hours despite younger employees being unable to complete the same route within that timeframe." *Id.* ¶ 144(b); *see also id.* ¶ 32 (USPS "began discriminating against . . . Ms. Staton as her Disability and/or her age caused her to bring back undelivered mail to meet her work restrictions.").

Preliminarily, the contention that younger employees were afforded preferences when it came to scheduling (or in any other way, for that matter) finds no mention in the Second Charge. *See* Section I, *supra*. The unexhausted allegations concerning supposed preferences for younger individuals therefore cannot be considered as support for Ms. Staton's ADEA claim.

Turning then to the "overburdened" route issue, which was exhausted in the Second Charge, there is no dispute that Ms. Staton is within the class of persons protected under ADEA, and this court has already determined that USPS's compelling her to complete the delivery of

this route in an eight-hour shift (in the face of her disability-related work restrictions) meets the "some harm" requirement for an adverse employment action under *Muldrow*. Nevertheless, the ADEA claim still fails.

Having parsed each of the well-pleaded, nonconclusory allegations in Ms. Staton's 22-page Amended Complaint and carefully reviewed her briefing, the court can extract no support for an inference that her age was a but-for cause of any "differential treatment." *See Babb*, 589 U.S. at 406. To the contrary, the only reasonable inference that emerges is that officials at the Littleton Post Office set up a regime in which all employees—regardless of their age—struggled to deliver the route assigned to Ms. Staton. Am. Compl. ¶ 57 ("managers knew that Ms. Staton could not consistently complete that task and knew that able-bodied and *younger employees were often unable to complete Route 2020 within eight hours*") (emphasis added); *see also id.* ¶ 51 ("much younger males" could not timely complete the route); *id.* ¶ 144(b) (same).[20] These allegations indicate *consistency* of treatment, irrespective of age, rather than *differential* treatment because of age. And the only other two allegations that even mention age are wholly conclusory proclamations of age-based discrimination that cannot support an inference of discrimination, either. *Id.* ¶ 32 (USPS "began discriminating against . . . Ms. Staton as her Disability and/or her age caused her to bring back undelivered mail to meet her work

---

[20] While Ms. Staton alleges that even non-disabled persons could not always complete the route, the court reaches a different conclusion with regard to her Rehabilitation Act claims because—in contrast with her genuinely threadbare age-related allegations—she has alleged facts sufficient to establish (at the pleading stage) a connection between her disability and the relevant adverse actions. Put another way, Ms. Staton has done enough to "nudg[e]" her Rehabilitation Act claims "across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570. Not so with her ADEA claim.

restrictions."); *id.* ¶ 55 (USPS forced "an elderly and disabled Ms. Staton to work on Route 2020 as constructed").

Ms. Staton's sparse and nonspecific allegations do not suffice to plausibly allege that her age was the but-for cause of any differential treatment concerning her "overburdened" route. She identifies no younger employees in the Littleton Post Office who were treated more favorably in terms of their routes and the work they were asked to complete, nor has she pleaded any other facts that would support an inference that any differential treatment occurred because of her age. *See Ariston v. USPS*, No. 21-cv-01669-HL, 2023 WL 6004200, at *6 (D. Or. Aug. 1, 2023), *report and recommendation adopted sub nom. Ariston v. United States Postal Serv.*, 2023 WL 6296651 (D. Or. Sept. 26, 2023) (dismissing ADEA claim where plaintiff "has not alleged any factual examples where similarly situated individuals 'substantially younger' than her were afforded benefits she was denied, nor provided any other inference of age discrimination").

In sum, giving Ms. Staton's well-pleaded facts the maximum possible credit, she has failed to plausibly allege that her age was "a but-for-cause of discrimination—that is, of differential treatment[.]" *Babb*, 589 U.S. at 406. The court therefore concludes that her age discrimination claim cannot survive USPS's motion to dismiss Claim Three, which is **granted**.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss, ECF No. 9, is **GRANTED** i**n part** and **DENIED in part**, as follows:

1.    Any claim based on Ms. Staton's first and third charges of discrimination (including without limitation Paragraph 132 of the Amended Complaint to the extent it refers to the first charge, and Paragraph 144(a)) is **dismissed without prejudice** for failure to exhaust;

2.      The Motion is **denied** with respect to Claim One, a claim asserting disparate treatment under the Rehabilitation Act, insofar as it seeks dismissal of any claim based on adverse employment actions numbers 1, 2, 4, 5, and 6;

3.      The Motion is **granted** with respect to Claim One insofar as it seeks dismissal of any claim based on adverse employment action number 3, which is hereby **dismissed without prejudice** to seeking leave to amend by **January 21, 2025**;

4.      The Motion is **denied** insofar as it seeks dismissal of Claim Two, a retaliation claim under the Rehabilitation Act, which may proceed in accordance with the parameters articulated above, limited to the Letters of Warning; and

5.      The Motion is granted insofar as it seeks dismissal of Claim Three, an ADEA claim, which is hereby **dismissed without prejudice** to seeking leave to amend by **January 21, 2025**.

If Ms. Staton seeks leave to amend, she shall also correct her mistake in alleging the Letters of Warning as retaliation for the Second Charge instead of the second informal EEO complaint. If Ms. Staton does not timely seek leave to amend, the dismissal in Paragraphs Three and Five will become with prejudice without further order of this court.

DATED: January 7, 2025                                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge